**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

DENISE L. HOLMAN,                              )
                                               )
            Plaintiff,                    )
                                               )
      v.                                       )       No. 2:24-cv-00101-HEA
                                               )
FELIX VINCENZ, et al.,                         )
                                               )
           Defendants.                   )

**OPINION, MEMORANDUM AND ORDER**

Self-represented Plaintiff Denise Holman brings this civil action against defendants employed by the State of Missouri and associated with the Missouri Department of Mental Health, alleging violations of her civil rights. As Plaintiff is proceeding *in forma pauperis* in this reopened matter, *see* ECF Nos. 4 & 10, the Court must review her amended complaint under 28 U.S.C. § 1915. Based on such review, the Court will dismiss this case for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). Plaintiff's pending motion for an extension of time will be denied.[1]

**Case Background**

Plaintiff filed this civil action in December 2024. ECF No. 1. On March 27, 2025, the Court issued an Order granting Plaintiff's motion to proceed *in forma pauperis* and directing her to file an amended complaint in compliance with the Court's detailed instructions. ECF No. 4. In that Order, the Court explained that Plaintiff's pleadings would not survive initial review unless she provided sufficient facts in support of her legal claims against each named defendant, and as

---

[1] This motion will be denied as moot because this case is being dismissed. However, the Court notes that Plaintiff's motion does not specify exactly what she needs an extension for, as the Court is not awaiting any filing or action on her part. For this additional reason, this motion is properly denied.

to the Doe defendants specifically, Plaintiff needed to provide enough facts for their identities to be determined with reasonable discovery. *Id.* at 4-6. The Court also warned Plaintiff that she could not raise claims in this matter that she had brought in other litigation before this Court, and that any § 1983 claims that were more than five-years old would be considered time-barred. *Id.* at 6-8. In response to that Order, Plaintiff failed to file an amended complaint in the time allowed, so this case was dismissed on May 12, 2025. ECF Nos. 5-6.

However, the day after the dismissal orders were issued, Plaintiff filed a motion for an extension of time to file an amended complaint. ECF No. 8. The Court construed the motion as a request to reopen the case. ECF No. 10. The motion was granted, the dismissal was vacated, and Plaintiff was given thirty (30) additional days to file an amended complaint. *Id.* Plaintiff filed her amended pleading on June 30, 2025. ECF No. 11.

### Plaintiff's Criminal Background

The allegations of the amended complaint are best understood with some background on Plaintiff's state-court criminal history. Based on Court records from a different case filed by Plaintiff in this Court,[2] on March 9, 2010, the State of Missouri filed an information charging Plaintiff with assault in the second degree. *Holman v. 10th Jud. Cir. of Marion Cnty. Mo.*, No. 2:24-cv-00090-HEA, ECF No. 6-7 (E.D. Mo. filed Nov. 22, 2024) (citing *State v. Holman*, No. 10MR-CR00099-01 (10th Jud. Cir., Marion County Court)). On August 2, 2010, in that state-court criminal matter, Plaintiff withdrew her not guilty plea and entered a plea of not guilty by reason of mental disease or defect excluding responsibility (NGRI). *Id.*; *see also* ECF No. 12-1 at 1 & 4. As such, the state court acquitted her of the charge of assault in the second degree, and on

---

[2] The Court may take judicial notice of public records when reviewing a complaint. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

2

August 25, 2010, Plaintiff was delivered to the Missouri Department of Mental Health (MDMH) for an indefinite term.  Plaintiff did not file a direct appeal of her commitment.

However, in 2019, Plaintiff filed a petition for writ of habeas corpus in this Court seeking conditional release from MDMH custody.  *Holman v. Vincenz*, No. 4:19-cv-01857-NCC (E.D. Mo. filed June 27, 2019).  In December 2019, the Court denied and dismissed Plaintiff's petition on the grounds that her challenge to her August 2010 commitment order was time-barred.  *Id.* at ECF Nos. 14-15.  In addition, Plaintiff's request for conditional or unconditional release from the Department of Mental Health had not been properly exhausted.  *Id*.  Plaintiff did not file an appeal.

 Almost two years later, in September 2021, Plaintiff filed a petition for writ of habeas corpus in the Circuit Court of Marion County Missouri again seeking release from MDMH confinement.  *Holman v. Javois*, No. 21MR-CV00972 (10th Jud. Cir., Marion County Court).  Plaintiff sought habeas relief on multiple grounds, including a claim that she was entitled to relief because she had not filed a written notice in her state-court case stating that she had no other defenses, as required by Missouri statute.  *See* Mo. Rev. Stat. § 552.030.2 ("The state may accept a defense of mental disease or defect excluding responsibility, whether raised by plea or written notice, if the accused has no other defense and files a written notice to that effect.").  Plaintiff's case was transferred to the St. Louis City Circuit Court.  *Holman v. Javois*, No. 2122-CC09496 (22nd Jud. Cir., St. Louis City Court).  And in March 2022, counsel for the MDMH conceded that Plaintiff's claim for relief was meritorious.  On June 13, 2022, Plaintiff's petition for writ of habeas corpus was granted and her 2010 judgment from the Marion County Circuit Court in *State v. Holman*, No. 10MR-CR00099-01, was vacated.  ECF No. 12-2 at 1-3.  On the following day, the prosecutor in Marion County announced his intent not to prosecute Plaintiff again on the 2010 second-degree assault charge.  *Id.* at 4.  Plaintiff was released from state custody.

3

Following Plaintiff's release, she filed a civil action under 42 U.S.C. § 1983 in this Court against the Marion County Circuit Court, two Marion County prosecutors, her public defender, two Marion County judges, the sheriff of Marion County, counsel for MDMH, and Doe defendants. *Holman v. 10th Jud. Cir. of Marion Cnty. Mo*., No. 2:24-cv-00090-HEA (E.D. Mo. filed Nov. 22, 2024). In her complaint in that matter, Plaintiff alleged that her Fourteenth Amendment due process rights were violated by the defendants and that she was wrongfully detained by the MDMH. On March 31, 2025, this Court granted Plaintiff *in forma pauperis* status and dismissed the case for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B). *Id.* at ECF Nos. 7-8.

### The Amended Complaint

Plaintiff brings the amended § 1983 complaint here for alleged civil rights violations that purportedly occurred during her commitment with MDMH. The eight named defendants are employees of the State of Missouri and associated with MDMH: (1) Felix Vincenz (chief executive officer (CEO)); (2) Laurent[3] Javois (former regional executive officer (REO)); (3) Kimberly Feaman (current REO); (4) Kathryn Thurman (chief operating officer (COO)); (5) Sadashiv Parwitikar (psychologist); (6) Amy Taylor (medical director); (7) Michelle Hoff (former psychiatric-mental health nurse practitioner (NP)); and (8) Karen Pitt (chaplain). ECF Nos. 11 at 1-2 & 11-1. Plaintiff names all Defendants in both their individual and official capacities. ECF No. 11-1.

---

[3] Plaintiff spells this defendant's first name different ways in the pleadings. *See* ECF Nos. 1 at 3 ("Laurent Javois"); 11 at 5 ("Laraunt Javois"); 11-1 at 1 ("Laurant Javois"). Based on a review of the MDMH website, the correct spelling of this defendant's name is "Laurent Javois." MISSOURI DEP'T OF MENTAL HEALTH: RESILIENCE COALITION TRANSITIONS MENTAL HEALTH EFFORTS TO THE COMMUNITY, https://dmh.mo.gov/node/5381 (last visited Dec. 2, 2025).

Plaintiff's claims pertain to the conditions of confinement during her 12 years with MDMH. She alleges that her First, Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendment rights were violated. ECF No. 11-2. Plaintiff makes some very specific claims against certain Defendants, but also broader claims about the general rules and procedures followed by MDMH. For example, while Plaintiff was in the care and custody of MDMH, she alleges that she was forcibly medicated with antipsychotic drugs and a COVID-19 vaccination. She asserts that her repeated requests to leave the facility, to discontinue medications, and to live independently, "because [she] never legally consented to NGRI," were met with "malicious reckless disregard" as to the truth of her claim. *Id.* at 2. In addition, Plaintiff complains that she signed a right to refuse medication, but that Defendants constantly told her that she had to be "medication compliant" in order to be released. *Id.* at 3. Also, she repeatedly told Defendants that she did not want to work in the client work program ("CWP"), but MDMH policies require achievement of certain CWP "levels and badges" to get conditional release. *Id.* at 3-4.

As to claims against specific Defendants, Plaintiff's allegations against CEO Felix Vincenz and former REO Laurent Javois are based on events which occurred in June 2020. ECF No. 11 at 5. According to Plaintiff, both these Defendants caused Plaintiff bodily harm and violated her right to avoid cruel and unusual punishment when they mandated that all MDMH patients receive a COVID-19 vaccination in order to resume visitation privileges. Plaintiff states that she was injected with the vaccination under duress and that the vaccine mandate was based on MDMH policies "and/ or" these Defendants' "personal beliefs." *Id.*

As for current REO[4] Kimberly Feaman, Plaintiff states that in March 2022, Feaman caused her mental and emotional anguish and physical harm by denying her the "right to appear at court

---

[4] Although Plaintiff describes Defendant Feaman as "Chief Executive Officer," *see* ECF No. 11-1 at 1, according to the MDMH website, Feaman is the REO of the Eastern and Metro East Regions. MISSOURI DEP'T OF MENTAL

or video court" for a hearing in her state-court habeas matter. ECF No. 11-2 at 5. Plaintiff states

no injury that she suffered because of this denial of access to the court, and it is unclear that she

suffered any because, as discussed above, Plaintiff was granted a writ in that state-court matter.

As for defendant COO Kathryn Thurman, Plaintiff states that, in July 2022, Thurman

denied her access to her patient records "by continuously having the records department send

forms that were not fillable and/or actively block phone calls from the Plaintiff." *Id.* Although

Plaintiff states that this caused her mental and emotional anguish and physical harm, she does not

detail any such harm. Plaintiff alleges that the requested records were "documentation for this

complaint;" however, Plaintiff did not initiate this action until over two years later. *Id.*

Plaintiff refers to psychologist Sadashiv Parwitikar as Dr. Sam, and states that she met with

Dr. Sam monthly from 2019 through 2022. During that time, Plaintiff alleges that Dr. Sam caused

her bodily harm and mental anguish by "administering policies" of MDMH "and/or his personal

beliefs." Specifically, Plaintiff states that when she expressed her desire to leave the MDMH

facility and discontinue medications "due to the fact Plaintiff was not legally bound nor did consent

to admission to MDMH," Dr. Sam acted with "malicious reckless disregard of whether the

Plaintiff's claim was false or not." Instead, Dr. Sam encouraged Plaintiff to accept her position

and "move past" it, so that she could work towards being granted conditional release. *Id.* at 2.

Plaintiff makes the same allegations of "malicious reckless disregard" against Defendants

medical director Amy Taylor, NP Michelle Hoff, and chaplain Karen Pitt. *Id.* at 1-3. Plaintiff

asserts Taylor acted as her therapist and when Plaintiff repeatedly complained that she should not

be at the MDMH facility, Taylor ignored her pleas, told her that her statements were

"counterproductive to treatment," and encouraged her "to work [her] way out." *Id.* at 2. Hoff told

---

HEALTH: REGIONAL EXECUTIVE OFFICERS, https://dmh.mo.gov/mental-illness/organization/regional-executive-officers (last visited Dec. 2, 2025).

Plaintiff that it was not her job to determine the truth of Plaintiff's claim, but her job was "to stabilize" Plaintiff and help her see her "thinking errors." *Id.* at 3. Finally, Pitt responded to Plaintiff by telling her that her repeated complaints were "not helping" her to get out and that there was concern Plaintiff was "stuck on this instead of focusing on how" to get her conditional release back and "follow the rules" so she can stay out. *Id.* at 4.

In addition to this allegation against defendant Taylor—the medical director of the MDMH facility where Plaintiff was a patient—Plaintiff also claims that Taylor force medicated her with antipsychotic drugs from 2020 through 2022 "intramuscularly every twenty-eight days." *Id.* at 1. This forced medication was in line with the MDMH custom or practice of requiring patients "to be medication compliant to transition back into the community." Also, on July 3, 2019, Taylor ordered the "use of forcible chemical restraint" on Plaintiff, in the form of two injections, which caused Plaintiff to lose consciousness. This action was taken after Plaintiff "pour[ed] milk with hardboiled egg over the head" of defendant NP Hoff. According to Plaintiff, this response is part of the MDMH "customs and practice of chemical restraint for violent assaultive behavior." *Id.*

In addition, Plaintiff makes allegations against Dr. Sam and NP Hoff concerning forced work. *Id.* at 2-4. Plaintiff asserts that the customs and practices of MDMH—including the establishment of certain guidelines for release—required her to participate in the client work program ("CWP"). Plaintiff states that she participated in this program "under duress" and in violation of her Thirteenth Amendment right to avoid involuntary servitude. *Id.* at 2-3. Plaintiff further complains that when she "grew despondent" about the CWP requirement, MDMH staff "fabricated positions with CWP not open to other clients … such as assistant to the Chaplain or watching DVDs on the ward and organizing them." *Id.* at 4.

Finally, as to NP Michelle Hoff, Plaintiff also alleges that Hoff prescribed and ordered the administration of psychotropic medications for Plaintiff against her will. *Id.* at 3. And as to chaplain Pitt, Plaintiff also alleges that Pitt "repeatedly interrupted" her and "abruptly adjourned" a meeting of "an administrative group held to hear [Plaintiff's] concerns about treatment" when Plaintiff started complaining to the group. *Id.* at 4.

In terms of injuries, Plaintiff states that she suffered pain, inflammation, and post-traumatic stress disorder (PTSD) from trypanophobia—a fear of needles and injections—because of the forced injections. ECF No. 11 at 5. Plaintiff is now under the care of a licensed counselor for PTSD and anxiety as she has been experiencing episodes of panic attacks, breathing problems, vomiting, shaking, headaches, crying, night terrors, and feelings of disconnect and loss of enjoyment of life. ECF No. 14 at 1. She states that she is still "[d]etoxing from the medication" she was given by Defendants, and that she is experiencing side effects including tardive dyskinesia, muscular degeneration, severe weight gain and loss, appetite changes, poor sleep, premature menopause from elevated prolactin levels, breast soreness, and mood swings. *Id.* at 3. Plaintiff has been homeless for the past three years "due to ineligibility of funding from MDMH, denial of disability and inability to maintain stable employment." ECF No. 11 at 6. According to Plaintiff, her 12 years with MDMH did not prepare her "to be independent of the system" and she suffered an abrupt re-introduction to the community "with little to know [sic] experience with simple technology such as cell phones, apps, laptops, social media, office equipment, job skills, [or] independent living skills." *Id.* Plaintiff complains that since her release, she "has not received any community support from MDMH other than therapy and being offered medication to treat Bi-polar disorder." ECF No. 14 at 2. Plaintiff explains that she is homeless because "she cannot yet

function socially and emotionally" and her "family members forcibly removed [her] from her only familiar environment." *Id.*

As for relief in this action, Plaintiff seeks injunctive relief ordering that MDMH discontinue their customs and practices concerning forced medication, not allowing access to legal websites and materials, set maximum time limits for commitment, update the legal definition required for commitment, and establish mental health courts. ECF No. 11 at 5. Plaintiff also seeks millions of dollars in damages. *Id.* at 6; ECF No. 14.

### Plaintiff's Additional Filings

After submitting her amended complaint to the Court, Plaintiff filed multiple other supplements. *See* ECF Nos. 12-14. The Court will treat these supplements as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). In one filing, Plaintiff refers the Court to state-court records for her original criminal case and the habeas case which resulted in her release. ECF No. 12 at 3. She also provides the Court with the language of Missouri's statute governing not guilty pleas based on mental disease or defect, Mo. Rev. Stat. § 552.030; the civil rights statute 42 U.S.C. § 1983; and wording from the MDMH website about the facility where she was held, the St. Louis Forensic Treatment Center. *Id.* at 1-5.

Finally, Plaintiff filed a copy of the MDMH's guidelines on the 'Administration of Psychotropic Medications Involuntarily' which outlines the procedures for involuntary administration of psychotropic medications. ECF No. 13.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or

9

seeks monetary relief against a defendant who is immune from such relief.  When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework.  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).  However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct."  *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  *Id.* at 679.

## Discussion

Plaintiff was committed to the custody of the Missouri Department of Mental Health for 12 years but ultimately granted a writ of habeas corpus and released from confinement.  The writ was appropriate because Plaintiff's NGRI plea did not comply with a Missouri statutory written-

notice requirement.  Plaintiff now brings this § 1983 action, complaining about being force medicated with antipsychotic drugs while in the custody of the MDMH, and other conditions of confinement.

Plaintiff's allegations regarding forced medication fail to meet the substantive and procedural requirements of a Fourteenth Amendment due process claim.  She does not provide any facts suggesting that the medication was not in her best interest or that procedural minimums were not followed.  In addition, based on the totality of the circumstances of Plaintiff's confinement, there are no allegations which indicate that Defendants acted with deliberate indifference towards Plaintiff, or that Plaintiff's conditions were unconstitutionally punitive.  As such, this case will be dismissed for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B).

## I.    Legal Standards

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978).  To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Although Plaintiff asserts claims under multiple Constitutional Amendments, most of Plaintiff's claims are properly analyzed under the Fourteenth Amendment.[5]  *See Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) ("If the essence of an allegation is discernible . . . then

---

[5] Plaintiff also asserts violations of the First, Fourth, Fifth, Eighth, and Thirteenth Amendments.  These Amendments are discussed where applicable.  *See* n. 6 (First & Eighth), n. 9 (Fifth), n. 10 (Fourth), p. 20 (First) & p. 22 (Thirteenth).

the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.") (quotations and citation omitted).  The Fourteenth Amendment of the United States Constitution guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1. Under the Due Process Clause of this Amendment, persons who have been involuntarily committed retain substantive liberty interests, which include the right to adequate food, shelter, clothing and medical care; safe conditions of confinement; and freedom from unnecessary bodily restraint.  *Youngberg v. Romeo*, 457 U.S. 307, 315–16 (1982).  "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."  *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

## II.    Involuntary Medication Claim[6]

Plaintiff alleges that her rights were violated when she was force medicated with antipsychotic drugs monthly while in MDMH custody.[7]  She appears to specifically assert these

---

[6] In addition to asserting a violation of the Fourteenth Amendment, Plaintiff alleges that her First and Eighth Amendment rights were violated when she was force medicated.  As to the First Amendment, Plaintiff states that she was forced medicated despite verbal objections and her complaints about wrongful commitment to the custody of MDMH. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.  According to the facts alleged in the amended complaint, Plaintiff was not prevented or prohibited from expressing her opinion or stating her objections; however, her statements were simply not considered or followed.  The First Amendment does not require that others agree with your speech.  As such, Plaintiff fails to state a claim under the First Amendment.

As to Plaintiff's Eighth Amendment claims, the Fourteenth Amendment's Due Process Clause is used to evaluate pretrial detainee and civilly committed persons' claims of deliberate indifference, whereas the Eighth Amendment is used to evaluate claims of convicted prisoners.  *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)); *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."); *Karsjens v. Lourey*, 988 F.3d 1047, 1051-54 (8th Cir. 2021) (discussing how civilly committed persons claims are treated similar to pretrial detainees). As such, the Court will examine Plaintiff's claims under the Fourteenth Amendment standard.

[7] Plaintiff also asserts that on July 3, 2019, a chemical restraint was wrongly used to forcibly subdue her after she assaulted NP Hoff.  She admits to the assault but contests the MDMH policy and custom of using forcible chemical restraints in response to violent assaultive behavior.  However, as the Court discussed in its March 27, 2025 Order, any claims pertaining to events which occurred prior to December 8, 2019, are barred by the statute of limitations.

claims against Defendants medical director Taylor, NP Hoff, and CEO Vincenz.  Plaintiff included with her pleadings an Administration of Involuntary Psychotropic Medications document dated October 2017, which describes MDMH procedures, and a blank Clinical Due Process Hearing Summary form used by the MDMH.  ECF No. 13.

The question as to whether a state may forcibly medicate a person has both substantive and procedural aspects.  *See Washington v. Harper*, 494 U.S. 210, 220 (1990).  "The substantive issue involves defining the protected constitutional interest, as well as identifying the conditions under which competing interests may outweigh it," while the "procedural issue concerns the minimum process required by the Constitution."  *Morgan v. Rabun*, 128 F.3d 694, 696 (8th Cir. 1997).  In this case, "the substantive issue is what factual circumstances must exist before the State may administer antipsychotic drugs to the prisoner against his will; the procedural issue is whether the State's nonjudicial mechanisms used to determine the facts in a particular case are sufficient."  *Harper*, 494 U.S. at 220.

With regard to the substantive component, the Due Process Clause of the Fourteenth Amendment gives an individual "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs."  *Id.* at 221-22.  As such, the state is permitted to treat a seriously mentally ill inmate with antipsychotic drugs against her will if the inmate is a danger to herself or others, and the treatment is in the inmate's medical interests.  *Id.* at 227; *see also Morgan*, 128 F.3d at 697 (explaining that with regard to substantive due process, a committed individual's due process rights are not violated if he is a danger to himself or others).  An inmate may also be

---

*See* ECF No. 4 at 7-8.  Section 1983 claims are analogous to personal injury claims and are therefore subject to Missouri's five-year statute of limitations.  *Sulik v. Taney Cnty., Mo.*, 393 F.3d 765, 766-67 (8th Cir. 2005); Mo. Rev. Stat. § 516.120(4).  "Although the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma pauperis complaint under 28 U.S.C. § 1915[] when it is apparent that the statute of limitations has run."  *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992) (citations omitted).  Because this case was initially filed on December 9, 2024, any claim relating to a July 2019 event would be time-barred and therefore will not be discussed by the Court.

forcibly medicated "if he (1) suffers from a mental disorder and (2) is gravely disabled," which includes "severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety." *Green v. Dormire*, 691 F.3d 917, 923 (8th Cir. 2012) (determining that Missouri policy providing for forced medication of a "gravely disabled" inmate comported with substantive due process).

To meet the procedural requirements of Due Process in the involuntary administration of antipsychotic drugs to a prisoner, there must be: (1) notice; (2) the right to be present at an adversarial hearing; (3) the right to present witnesses; and (4) the right to cross-examine witnesses. *See Harper*, 494 U.S. at 235; *see also Doby v. Hickerson*, 120 F.3d 111, 113 (8th Cir. 1997) (explaining that the "minimal constitutional requirements for satisfying procedural due process when a state involuntarily administers antipsychotics to a prisoner" consists of "an independent decisionmaker as well as for notice, the right to be present at an adversary hearing, and the right to present and cross-examine witnesses").

Though *Harper* dealt with a prison inmate, the same factors have been applied to civilly committed individuals who have been forcibly medicated. *See Morgan*, 128 F.3d at 696 97 (applying *Harper* factors to an individual committed to the Missouri Department of Mental Health). That is, the "governmental interests in running a state mental hospital are similar in material aspects to that of running a prison," as the state has "a vital interest in ensuring the safety of their staff, other patients, and of course in ensuring the patients' own safety." *Id*. at 697.

Allegations that forced medication are not in an individual's best interest may support a claim under 42 U.S.C. § 1983. *See Thomas v. Eschen*, 928 F.3d 709, 713 (8th Cir. 2019) (explaining that if state officials force a civilly committed individual to take drugs having no

connection to his mental illness, or intentionally injure him while treating him, the individual may have a viable claim for damages under § 1983). However, more than "threadbare allegations" are required to support a claim. *Id*. at 714 (noting that plaintiff's claim that he had been "medicated" for the "wrong reasons" did not demonstrate "what, when, where, why, or how [the] drugs were administered").

In this case, Plaintiff has not alleged either a substantive or procedural violation of the Fourteenth Amendment. With regard to the substantive component, Plaintiff presents no facts showing that she was not suffering from a mental illness, and that she was not a danger to herself or others, or gravely disabled. Although Plaintiff was eventually released from confinement, that release was due to a defect in her NGRI plea. There is no evidence demonstrating that Plaintiff was not suffering from a mental illness while committed. She states that she was force injected with the "anti-psychotic Invega Sustenna"—a medication for the treatment of schizophrenia[8]— but she does not allege that she did not have schizophrenia, that this medication had no connection to her illness, or that it was intended to intentionally injure her. Plaintiff does not even state or argue that she did not need antipsychotic medications at the time. Instead, she states that she signed a waiver concerning her right to refuse medication, and that she expressed a fear of needles and a desire to not take antipsychotic medications due to potential side effects. None of these allegations suggest that the antipsychotic medications were not needed. In fact, Plaintiff seems to admit in her pleadings that she is currently undergoing treatment for mental illness. *See* ECF No. 14 at 2 (stating that since her release from MDMH confinement, Plaintiff "has not received any community support from MDMH other than therapy and being offered medication to treat Bi-polar disorder"). In addition, there are no allegations that Plaintiff was not a danger to herself or others.

---

[8] *See* INVEGA SUSTENNA, https://www.injectionsforschizophrenia.com/ (last visited Dec. 10, 2025).

As such, Plaintiff's "threadbare allegations" are not enough to suggest that it was not in her best interest to be medicated against her will.  *See Thomas*, 928 F.3d at 714.

   As for the procedural component of due process, Plaintiff never alleges that she was denied (1) notice; (2) the right to be present at an adversarial hearing; (3) the right to present witnesses; and (4) the right to cross-examine witnesses.  Although Plaintiff attached a blank Clinical Due Process Hearing Summary form, she does not provide the forms which resulted from her own due process hearings.  Plaintiff also never alleges that she appealed any MDMH decision for forced medication or exhausted any other available administrative remedy.[9]

In addition, because Plaintiff's forced medication claim fails, any claim relying on the unconstitutionality of her involuntary medication also fails. For example, to the extent Plaintiff argues that it was improper for MDMH to require her to be compliant with her medications in order to be released from custody, this claim also fails.  Because Plaintiff fails to provide evidence that her antipsychotic drugs were not in her best interest, there is no support for her bare assertion that requiring such medications for release from confinement was improper.

For these reasons, Plaintiff fails to state a claim against any defendant regarding involuntary medication of antipsychotic drugs while in MDMH custody.  *See also Green v. Dormire*, 691 F.3d 917 (8th Cir. 2012) (finding involuntary medication under Missouri policy complies with Fourteenth Amendment due process rights).

## III.    Conditions of Confinement Claims

---

[9] Plaintiff does assert that her Fifth Amendment right of "fair procedures" was violated when she was force medicated with antipsychotic drugs. ECF No. 11-2 at 1.  The Fifth Amendment protects against a person being "deprived of life, liberty, or property without due process of law."  U.S. Const. amend. V.  However, as discussed in relation to the procedural requirements of Fourteenth Amendment due process, Plaintiff fails to assert that she was denied any constitutionally required procedural component.  As such, Plaintiff fails to state a claim under the Fifth Amendment.

Plaintiff's other claims can all be categorized as complaints about the conditions in which she was confined while in the custody of MDMH.  According to the Eighth Circuit Court, a "deliberate indifference" legal standard applies to civilly committed individual's claims regarding inadequate medical care.  *Karsjens v. Lourey*, 988 F.3d 1047, 1051-52 (8th Cir. 2021).  Under this standard, "a plaintiff must show that 'officials knew about excessive risks to his health but disregarded them, and that their unconstitutional actions in fact caused his injuries.'"  *Id.* (quoting *Senty-Haugen v. Goodno*, 462 F.3d 876, 890 (8th Cir. 2006)).

However, as to other claims concerning conditions of confinement brought by civilly committed individuals, the Eighth Circuit has concluded that the standard established in *Bell v. Wolfish*, 441 U.S. 520 (1979), applies.  *Id.* at 1054.  In *Bell*, the Supreme Court held that, as to pretrial detainees, conditions of confinement violate due process if they "amount to punishment of the detainee."  441 U.S. at 535.  Based on Supreme Court precedent, the Eighth Circuit found that the *Bell* standard "applies equally to conditions of confinement claims brought by pretrial detainees and civilly committed individuals, as neither group may be punished."  *Karsjens*, 988 F.3d at 1053.

As explained below, under both a deliberate-indifference standard and an intent-to-punish standard, the allegations of Plaintiff's amended complaint fail to state a § 1983 claim upon which relief may be granted.

### a. COVID-19 Vaccination[10]

Plaintiff states that in June 2020 CEO Vincenz and former REO Javois violated her rights when they mandated that she receive a COVID-19 vaccination "to resume visitation privileges."

---

[10] The Court notes that Plaintiff also alleges that the June 2020 COVID vaccine was a violation of her Fourth Amendment rights.  ECF No. 11 at 5.  The Fourth Amendment protects against unreasonable searches and seizures and requires probable cause for the issuance of a warrant.  U.S. Const. amend. IV.  Plaintiff does not explain how her Fourth Amendment rights were violated, nor can the Court decipher how such rights were violated by this vaccine.  As such, Plaintiff fails to state a Fourth Amendment claim here.

ECF No. 11 at 5. According to Plaintiff, she was vaccinated "under duress." *Id.* She lists her injuries as pain during injection, painful inflammation at injection site, and PTSD from her fear of needles. *Id.*

This claim, like many of Plaintiffs, could be interpreted as an inadequate medical care claim or just a general conditions of confinement claim. Regardless, under both legal standards, the Court finds that Plaintiff fails to state a violation of the Fourteenth Amendment because this requirement for visitation is neither deliberately indifferent nor punitive in nature. Plaintiff points to no excessive risk to her health that resulted from this visitation requirement, nor is there any evidence that this requirement was intended to punish.

Furthermore, the Eighth Circuit has discussed the allowable limitations on inmates' visitation privileges, holding that "prison officials who permanently or arbitrarily deny an inmate visits with family members … have acted in violation of the Constitution." *Manning v. Ryan*, 13 F.4th 705, 708 (8th Cir. 2021) (citing to *Turner v. Safley*, 482 U.S. 78, 89, 95-96 (1987); *Overton v. Bazzetta* 539 U.S. 126, 137 (2003); *Easterling v. Thurmer*, 880 F.3d 319, 323 (7th Cir. 2018)).

In June 2020, when MDMH mandated this vaccination requirement for visitation privileges, COVID-19 was known to be a serious, communicable disease that was just beginning to be understood. Institutions (where people were held in close confinement) struggled with how to prevent the spread of the disease among their clients. A visitation requirement intended to prevent COVID exposure from outside visitors, which could lead to widespread transfer within the institution, was not an arbitrary denial of visitation privileges. This visitation limitation was reasonably related to the safety interests of the MDMH clients. In addition, there is no evidence that this MDMH requirement on visitation privileges was applied in an arbitrary manner. And finally, Plaintiff had a choice as to whether to receive the vaccination or not.

### b.  Malicious Disregard of Plaintiff's Complaints

Plaintiff also asserts that many named Defendants—including Dr. Sam, medical director Taylor, NP Hoff, and chaplain Pitt—acted with "malicious reckless disregard" to Plaintiff's complaints that she was improperly placed in MDMH custody and that she wanted to leave the facility, discontinue medications, and live independently.  ECF No. 11-2 at 1-4.

To the extent that this claim can be construed as a complaint as to inadequate medical care, Plaintiff fails to allege that any Defendant was aware that Plaintiff's commitment with the MDMH was legally invalid during her 12 years of treatment.  Without such knowledge, there is no indication that any Defendant acted with deliberate indifference to Plaintiff's complaints of wrongful medical confinement.  Furthermore, there were no known health risks to Plaintiff that were deliberately disregarded by Defendants.  Although Plaintiff complains that the medical treatment she received from MDMH caused "Post Traumatic Stress Disorder trauma from Trypanophobia," she does not state that she had this diagnosis while in MDMH custody, that Defendants were aware of the diagnosis, and that they were deliberately indifferent to it when deciding on her treatment plan.  ECF Nos. 11 at 5, 11-2 at 1.  Furthermore, allegations of negligence in medical treatment or a "mere disagreement with treatment decisions" will not suffice to state a claim of deliberate indifference.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Mbonyunkiza v. Beasley*, 956 F.3d 1048, 1054-55 (8th Cir. 2020); *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

Similarly, nothing in the pleadings indicate that Defendants' responses to Plaintiff's complaints were punitive in nature.  Plaintiff complains that Defendants disregarded her complaints and encouraged her to follow the rules and complete the required steps for release. There is no indication that Plaintiff was treated any differently from any other MHMD client by

the Defendants.  The facts alleged show that Defendants were not trying to punish her but trying to help her complete the requirements for release.[11]

### c.  Denial of Access Claims

Plaintiff further asserts that REO Feaman denied her the right to appear for video court on March 20, 2022, in her state habeas case, and that COO Thurman denied her medical records on July 15, 2022, which she needed for a lawsuit.  ECF No. 11-2 at 5.  Under the First Amendment, the freedom to petition includes the right of access to courts.  *See BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 525 (2002).  The Eighth Circuit has recognized that, when bringing an access-to-courts claim, it is insufficient to merely allege a denial of access to a law library or other specific resource, even if the denial is systemic.  *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (citing *Lewis v. Casey*, 518 U.S. 343, 353 n.4 (1996)).  Instead, the plaintiff must plead (and ultimately prove) that the lack of the library or other resource deprived him of some specific opportunity to defend himself, or advance a viable legal claim, in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate constitutional rights.  *Id.*  Speculation that injuries might occur or could have occurred is insufficient.  *Hartsfield v. Nichols*, 511 F.3d 826, 833 (8th Cir. 2008) ("[a]bsent an articulation of how the alleged wrongful conduct actually blocked [the prisoner's] access to filing a complaint, or caused a filed complaint to be deficient, [the prisoner's] alleged injuries are merely speculative").  To state a claim for a violation of this right, inmates must assert that they suffered an actual injury to pending or contemplated legal claims.  *See Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996).

---

[11] In addition, Plaintiff complains that chaplain Pitt "repeatedly interrupted" her, "abruptly adjourned" a meeting that she was in, and removed Plaintiff "from an administrative group."  ECF No. 11-2 at 4.  Such allegations fail to state a deliberate indifference violation, nor do they establish that Pitt's actions were intended to punish.  Furthermore, the Constitution does not guard against all intrusions on one's peace of mind and in general, verbal threats do not constitute a § 1983 claim.  *See King v. Olmsted Cnty.*, 117 F.3d 1065, 1067 (8th Cir. 1997); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993); *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992).

In this case, Plaintiff alleges that the denial to participate in video court caused her mental and emotional anguish and physical harm, and that she had to contact the attorney general to explain that she was not able to appear.  ECF No. 11-2 at 5.  None of these injuries are an actual injury to pending or contemplated legal claims.  In fact, despite not being able to appear on March 20, 2022, the state court granted Plaintiff a writ of habeas corpus in that case.  As such, the evidence demonstrates that Plaintiff did not suffer an injury, and these allegations fail to state a § 1983 claim.

As for the July 2022 claim against COO Thurman, Plaintiff alleges that she suffered mental anguish and physical harm when she was denied "the right to patient records by continuously having the records department send forms that were not fillable and/or actively block phone calls from the Plaintiff … trying to acquire documentation for this complaint."  ECF No. 11-2 at 5.  These accusations do not evidence a denial of access to medical records, they simply indicate that Plaintiff had difficulty communicating with the records department on July 15, 2022.  However, even liberally construing these facts, Plaintiff does not explain, nor is it apparent, how denial of access to copies of her mental health records caused her actual injury in a lawsuit that she filed over two years later.  She does not allege any deprivation of the opportunity to advance any specific claim in this action, or any deficiency in this case created by the alleged denial of access to these records.  Plaintiff alleges that the records are needed to seek court relief, but any injury to a court claim is only speculative.  When no actual injury is alleged, dismissal for failure to state a claim is proper.  *See Hartsfield*, 511 F.3d at 832.

### d.  Forced Work Claim

Finally, Plaintiff alleges that Dr. Sam and NP Hoff caused her mental and physical harm when they followed MDMH policies, which required that Plaintiff participate in a Client Work

Program (CWP) for release from MDMH custody.  ECF No. 11-2 at 2-4.  Plaintiff states that participating was "against [her] will" and "under duress."  *Id.* at 2.  According to Plaintiff, she "repeatedly and adamantly expressed her desire to stop working for the client work program" in monthly meetings with Hoff.  *Id.* at 3.  And when Plaintiff "grew despondent," MDMH employees "fabricated positions with CWP not open to other clients yet only to the Plaintiff such as assistant to the Chaplain or watching DVDs on the ward and organizing them."  *Id.* at 4.  Dr. Sam explained to Plaintiff that participation in the CWP is intended to "show your [sic] capable of following guidelines."[12]  *Id.* at 2.

The facts alleged do not establish that the CWP was punitive in nature or intended to punish Plaintiff, in violation of the Fourteenth Amendment's due process protection.  Instead of trying to penalize Plaintiff, the evidence suggests that Defendants were allowing Plaintiff to fulfill her CWP requirement through multiple nontraditional options that were not open to other clients. Defendants were going out of their way to try to help Plaintiff meet this release requirement by letting her do things like watch DVDs.  They were not trying to unjustly punish her.

Plaintiff also claims that the CWP requirement violates the Thirteenth Amendment's prohibition on involuntary servitude.  *See* U.S. Const. amend. XIII.  According to the Supreme Court, "not all situations in which labor is compelled by physical coercion or force of law violate the Thirteenth Amendment."  *United States v. Kozminski*, 487 U.S. 931, 943 (1988).  For criminal prosecutions, "'involuntary servitude' … means a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process."  *Id.* at 952.  Generally, involuntary servitude "incorporates two elements: first, the use of force or legal coercion; and second, no

---

[12] Despite (or possibly, as a result of) Plaintiff's resistance to participate in the CWP, she complains that her 12 years with the MDMH "never prepared [her] to be independent of the system."  ECF No. 11 at 6.

option to work elsewhere." *Boyle v. City of Liberty, Mo.*, 833 F. Supp. 1436, 1445 (W.D. Mo. 1993) (citing *Watson v. Graves,* 909 F.2d 1549 (5th Cir. 1990)).  In this case, there is no evidence that Plaintiff was forced to participate in the CWP by force or legal coercion.

Furthermore, in the context of prisoners, it is clearly established that compelling prison inmates to work does not contravene the Thirteenth Amendment.  *Mosby v. Mabry*, 697 F.2d 213, 215 (8th Cir. 1982) (citation omitted).  Prison work requirements may constitute cruel and unusual punishment in violation of the Eighth Amendment if "prison officials knowingly compel convicts to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly painful."  *Ray v. Mabry*, 556 F.2d 881, 882 (8th Cir. 1977) (per curiam) (quoting *Talley v. Stephens*, 247 F.Supp. 683, 687 (E.D. Ark. 1965)); *see also Franklin v. Banks*, 979 F.2d 1330, 1332 (8th Cir. 1992).  Again, there are no facts alleged that suggest that Defendants were asking Plaintiff to participate in work beyond her strength or which constituted a danger to her life or health.

### Conclusion

Having thoroughly reviewed and liberally construed the amended complaint and the supplemental documents, the Court concludes that this case is subject to dismissal because it fails to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B).  The Court can envision no amendment to the pleadings that would cause it to state a plausible claim for relief.  The Court will therefore dismiss this action at this time, without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the amended complaint because the complaint fails to state a claim upon which relief can be granted.  Plaintiff's claims against defendants Felix Vincenz, Laurent Javois, Kimberly

Feaman, Kathryn Thurman, Sadashiv Parwitikar, Amy Taylor, Karen Pitt, and Michelle Hoff are **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that Plaintiff's motion for an extension of time [ECF No. 17] is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Opinion, Memorandum and Order.

Dated this 15th day of December, 2025.

_____
    HENRY EDWARD AUTREY
    UNITED STATES DISTRICT JUDGE